IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ART AKIANE LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 1: 20-cv-05643 |
| ) | |
| v. ) | Judge John J. Tharp, Jr. |
| ) | |
| MARDEL, INC., ST. JUDE SHOP, ) | |
| INC., and CHRISTIANBOOK, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Art Akiane, LLC, the eponymous company representing Akiane Kramarik, a painter of religious-themed artwork, has sued the defendants for alleged copyright infringement. Mardel, Inc., a chain of bookstores headquartered in Oklahoma, moves to dismiss for lack of personal jurisdiction and improper venue. St. Jude Shop, Inc., a brick-and-mortar store in Pennsylvania that also maintains an online store, moves to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim for which relief can be granted. For the reasons discussed below, the Court concludes that it lacks personal jurisdiction over St. Jude and Mardel and dismisses them without prejudice to the reassertion of Akiane's claims in a court that can exercise personal jurisdiction over the defendants.[1]

**BACKGROUND**

There is a parallel matter pending in this District, *Art Akiane LLC v. Art & SoulWorks LLC*, No. 19-cv-02952. In that case, Akiane is suing its former distributor, who formerly possessed a

---

[1] The third defendant, Christianbook, LLC, was voluntarily dismissed from this lawsuit.

1

license to Akiane's copyrights and trademarks. Mardel's Mot. to Dismiss 1, ECF No. 46. St. Jude and Mardel were customers of Art & SoulWorks, which supplied the defendants with Akiane products until its license expired in January 2019.

St. Jude is a Pennsylvania corporation that, for several years, purchased and sold products from Art & SoulWorks. St. Jude has a single retail location in Pennsylvania and an interactive website that sells religious-themed artwork and other products. In the three years prior to the filing of this lawsuit, St. Jude has sold exactly one Akiane product to anyone in Illinois through its online site. A packing slip and a photograph of that product document the transaction. ECF No. 18-1. That lone sale was to "Mark Kramarik, Art Akiane, LLC," who purchased a framed print of Akiane's *Prince of Peace* from St. Jude on May 24th, 2019, for $70.00. Second Decl. of Louis DiCocco ¶ 12, ECF No. 37-2. St. Jude filled the order, shipping the print to Art Akiane, LLC, in Highland Park, Illinois. ECF No. 18-1.[2] St. Jude allegedly sold this product without any authorization from Art Akiane. Compl. ¶¶ 60-71.

Mardel is incorporated in Oklahoma, where it also maintains its principal place of business. Compl. ¶ 8. It has no physical presence in Illinois, though like St. Jude, it maintains an online store accessible to residents of Illinois. On five occasions between May 2019 and January 2020, Mardel shipped Akiane products purchased through its online store to Illinois; in each case, the "customer" was an Akiane representative. Pl.'s Resp. to Mardel's Mot. to Dismiss 6, ECF No. 58. Those five

---

[2] There have been two other small sales of Akiane products to Illinois, one on December 16, 2016 and another February 7, 2017. Second DiCocco Decl. ¶ 9, ECF No. 37-1. The defendant contends these sales are not relevant to this litigation because of the Copyright Act's three-year statute of limitations, under which the relevant period for this litigation is September 23, 2017 to September 23, 2020. *Id.* at ¶ 11. The plaintiff, who knew about these sales before the time came for it to respond to St. Jude's Motion to Dismiss, *see* Def.'s Obj. to Pl.'s Mot. for an Extension 5 n.2, ECF No. 23, appears to have waived any argument that these sales are relevant for establishing St. Jude's contacts with Illinois. Its arguments focus solely on the one investigative sale made to the plaintiff's relative in 2019. *See* Pl.'s Resp. to St. Jude's Mot. to Dismiss 3, ECF No. 36.

orders consisted of twelve products. Decl. of Shannon Brown ¶ 5, ECF No. 52-1. Akiane filed several pictures of packing slips, receipts, and recently-unboxed products, demonstrating that Mardel shipped small frames, magnets, and other items featuring reproductions of Akiane Kramarik's *Prince of Peace.* Ex A to Akiane's Mot. for Jurisdictional Discovery, ECF No. 49-1. The buyers were Mark Kramarik and Jeanlu Kramarik. There are four purchases documented in this manner, for amounts ranging from $17.00 to $150, though the defendant acknowledged that five such sales were made to the plaintiff. Mardel's Mot. to Dismiss 1, ECF No. 59. Mardel is similarly alleged to have sold the goods in violation of Akiane's copyright. Compl. ¶¶ 47-59.

After each of the remaining defendants moved to dismiss for lack of personal jurisdiction, Akiane requested jurisdictional discovery. Akiane's request as to St. Jude was mooted when that defendant filed an affidavit detailing its contacts with Illinois. ECF No. 23-2. St. Jude also supplemented its briefing on the motion to dismiss with additional affidavits. After Akiane moved for jurisdictional discovery against Mardel, that defendant filed an affidavit which, Akiane argued, was insufficiently responsive. The Court granted further limited jurisdictional discovery as to Mardel, directing that defendant to answer interrogatories regarding its contacts with Illinois. ECF No. 56. Mardel responded with answers to those interrogatories as well as another affidavit. ECF Nos. 59-1. 59-2.

## DISCUSSION

The three essential requirements for the exercise of specific personal jurisdiction over an out-of-state defendant are that (1) "the defendant . . . purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state"; (2) the plaintiff's injury stemmed from the "defendant's forum-related activities"; and (3) the exercise of personal jurisdiction "comport[s] with traditional notions of fair play and substantial justice."

*Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012).³ The doctrine of personal jurisdiction "provides defendants with fair warning—knowledge that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Ford Motor Corp. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (internal quotation marks omitted).

When a defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020). Where, as here, the Court does not hold an evidentiary hearing, but rules based on affidavits and other papers, the plaintiff bears the burden of making a prima facie case for personal jurisdiction. *Id.* Under the prima facie standard, the Court resolves all factual disputes in favor of the plaintiff.⁴ *Id.* Nevertheless, the Court concludes that Akiane has not carried its burden with respect to either defendant.

St. Jude and Mardel contend that they lack the minimum contacts with Illinois necessary to justify this Court's exercise of personal jurisdiction over them. *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 216 (1945). St. Jude has one retail location in Pennsylvania, is not incorporated in Illinois, none of its members reside in Illinois, and it employs no sales team that markets St. Jude's business in Illinois. Second Decl. of Louis R. DiCocco ¶¶ 3, 9, Ex. A to St. Jude's Reply, ECF No. 37-1. For its part, Mardel is an Oklahoma corporation with its principal place of business in Oklahoma and similarly has no offices, stores, or employees in Illinois. Decl. of Jennifer Ramirez ¶¶ 3-4, ECF No. 46-1. Akiane sought information about Mardel's advertising

---

³ Art Akiane does not argue that the Court can exercise general personal jurisdiction over either defendant.

⁴ The parties dedicate considerable energy to disputing whether the sales of Akiane products were licensed or not; with this standard of review in mind, the Court resolves those disputes in favor of Akiane and assumes the sales were infringing. At any rate, the parties' frequent detours into the merits of this lawsuit on a procedural motion are unavailing and do not help their jurisdictional arguments.

and other efforts to market goods in the state; this effort yielded a response indicating that Mardel has attended a few conferences in Illinois, all of which are "national conferences that change host cities often." Mardel's Resp. to Jurisdiction Interrog. Ex H. to Mardel's Mot. to Dismiss, ECF No. 59-1. Akiane does not argue these conferences are relevant to the jurisdictional inquiry.

The only possible contacts that could justify this Court's exercise of personal jurisdiction over these defendants, then, are their online stores and any other actions they have taken to purposefully avail themselves of the Illinois market. St. Jude fulfilled one order placed by the plaintiff in Illinois, and Mardel, five. The defendants point to the numerous Seventh Circuit opinions holding that an interactive website accessible to residents of the forum state is not enough to justify an exercise personal jurisdiction. *See, e.g., Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010). Moreover, they argue that their sales to Illinois are too paltry to establish minimum contacts with the state, and that, in any event, those sales should be disregarded because the customer was the plaintiff.

Akiane relies on the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783, 790 (1984), which held that a court can exercise personal jurisdiction over a defendant that "expressly aimed" intentionally tortious conduct at the forum state with the knowledge that the plaintiff's harm would be felt in the forum state. Pl.'s Resp. 3, ECF No. 36. According to Akiane, those conditions are met here: St. Jude and Mardel committed an intentional tort (copyright infringement), knowing that Akiane is in Illinois, and "reached into" the state by maintaining websites accessible to Illinois residents, fulfilling orders of infringing goods to the plaintiff, and responding to litigation correspondence in the state. Pl.'s Resp. to St. Jude's Mot. to Dismiss 6-8; Pl.'s Resp. to Mardel's

Mot. to Dismiss, ECF No. 58. Because the defendants "knew of Art Akiane and knew that [they] were infringing an Illinois entity's copyrights and that [their] actions would cause harm this state," this Court can exercise personal jurisdiction over them. Pl.'s Resp. to Mardel's Mot. to Dismiss 5, ECF No. 58.

But *Calder* did not authorize personal jurisdiction wherever a plaintiff feels harm; to the contrary, that decision "made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 289-290 (2014). Akiane's expansive reading of *Calder* might once have had purchase. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (holding that a phone call from California to New Jersey that tortiously interfered with business in Illinois established personal jurisdiction in Illinois). Not anymore: The Seventh Circuit has recognized that this plaintiff-centric take on *Calder* is not viable after *Walden*. *See Advanced Tactical*, 751 F.3d at 802 (recognizing *Janmark's* abrogation and observing that "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum'").

Evidence of the defendants' contacts with this forum is lacking, and the record points to the plaintiff as the only link between the defendant and Illinois in this litigation. It is well established that a defendant's operation of an interactive website alone does not give rise to personal jurisdiction. "[H]aving an 'interactive website' should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website it accessible." *Matlin v. Spin Master Corp.,* 921 F.3d 701, 706 (7th Cir. 2019) (quoting *Advanced Tactical*, 751 F.3d at 803). Significant and recurring sales to Illinois might suffice to show that St. Jude and Mardel targeted the forum state. *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 400 (7th Cir. 2020) (holding that defendant's 767 sales of allegedly infringing products to Illinois showed that Revolution had

"purposely exploited the Illinois market"); *Moser v. Ayala*, 2013 WL 1337187 *4 (N.D. Ill. 2013) (finding personal jurisdiction appropriate where defendants had relationship with Illinois-based distributor through whom they sold over a thousand records in the state). But "a 'miniscule' number of transactions won't do." *Rubik's Brand Ltd. v. The P'ships and Unincorporated Assocs. Identified on Schedule A*, 2021 WL 825668 *3 (N.D. Ill. 2021). Thus, in *be2 LLC v. Ivanov*, the Seventh Circuit found evidence that 20 Illinois residents had opened accounts on the defendant's interactive website to be inadequate to confer personal jurisdiction given the small number of customers and the absence of evidence of further interaction with them apart from their respective initial interactions with the defendant's web site. 642 F.3d at 559.

Not only is the number of sales here miniscule, but the single purchase from St. Jude and the five purchases from Mardel hardly demonstrate that the defendants were targeting Illinoisans for business; all of the transactions on which Akiane relies for personal jurisdiction over the defendants but were sales initiated not by the defendants but by Art Akiane itself. The Seventh Circuit takes a dim view of such plaintiff-manufactured jurisdictional contacts. *See Matlin*, 921 F.3d at 706 (disregarding "a single incident conjured up by the plaintiffs' attorney" as a basis for exercising personal jurisdiction."); *see also Native American Arts, Inc. Contract Specialties*, 2010 WL 658864 *4-5 (N.D. Ill. 2010) (gathering cases holding that "a plaintiff cannot manufacture jurisdiction against an out-of-state defendant by purchasing that defendant's products from the forum state"). If having an interactive website does not expose a defendant to suit, it would make little sense to hold that a few isolated interactions with that website by the plaintiff, in anticipation of litigation, would alter the calculus. Indeed, apart from its own trolling on the defendants' web sites, the absence of any sales means that there is no evidence that anyone in Illinois has even visited the defendants' web sites in the past three years. *Rubik's Brand*, 2021 WL 825668 at *4

(no personal jurisdiction where evidence failed to establish even that any Illinoisan has ever viewed the defendant's website). Where the only contacts between a forum and the defendant are contacts manufactured by the plaintiff, it cannot be said that the exercise of personal jurisdiction "comport[s] with traditional notions of fair play and substantial justice."

Nonetheless, Akiane argues that its purchases from the defendants establish personal jurisdiction, just like the sales at issue in *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), which were also initiated by the plaintiff. In that case, an Illinois Department of Revenue agent purchased over three hundred packs of cigarettes from the defendant, a New Mexico-based company, over a period three years. The State sued Hemi for its failure to submit monthly reports of Illinois sales as required under Illinois law. *Id.* at 756. The Seventh Circuit held that these website sales sufficed to justify an Illinois forum's exercise of specific personal jurisdiction. *Id.* at 758. So too here, says Akiane: St. Jude and Mardel shipped allegedly infringing products to Akiane in Illinois; and in Mardel's case, there were multiple sales over a period of years.

But that superficial reading elides critical distinctions between this case and *Hemi*. First, the defendant in *Hemi* explicitly excluded sales to New York because it was tied up in litigation in that state. By so discriminating, Hemi demonstrated that "it knew how to protect itself from being haled into court in any particular state," and that it could foresee being sued in Illinois if it shipped tobacco there. *Id.* at 758. Second, the defendant's contacts in *Hemi* involved "unregistered sales of a regulated product, tobacco, in violation of state law." *Matlin*, 921 F.3d at 706 (distinguishing *Hemi*). Finally, it was relevant that the plaintiff in *Hemi* was a state: "Illinois courts have a strong interest in providing a forum to resolve a dispute involving the state itself." *Id.* at 760. No such concerns are present here; defendants are not trafficking in goods heavily regulated by state law, and Illinois has no special interest in the outcome of this lawsuit.

Plaintiff's miniscule number of purchases from the defendants do not provide the contacts necessary to give rise to personal jurisdiction, so Akiane is left with its contention that it "is feeling the effect of Mardel's infringement of Art Akiane's longstanding copyrights in this District." Pl.'s Resp. to Mardel's Mot. to Dismiss 9, ECF No. 58. Akiane's subjective experience of harm in Illinois cannot justify an exercise of personal jurisdiction over the defendants. Akiane would, one assumes, object to infringement of its copyrights anywhere, not just in Illinois. *See Matlin*, 921 F.3d at 707 ("The defendants' alleged objectionable conduct in this case—failing to pay Matlin and Waring royalties on the products—has little to do with Illinois."). The problem with Akiane's broad "effects" theory is that copyright infringement anywhere would be "felt" in Illinois, because Akiane is located here, and, in some sense, experiences the harm of infringement here. By contrast, libel, the intentional tort at issue in *Calder*, has particularly local effects—"the strength of [the defendant's contacts were] largely a function of the nature of the libel tort." *Walden*, 571 U.S. at 1123 (expounding *Calder*). Absent some indication that the defendants have targeted the forum state, the Court cannot say that the defendants have purposefully availed themselves of the privilege of doing business here such that they were on notice they could be haled into an Illinois court. To conclude otherwise would mean that "there is no limiting principle—a plaintiff could sue everywhere. Such a result would violate the principles on which *Walden* and *Daimler* rest." *Advanced Tactical*, 751 F.3d at 803.

Accordingly, the Court concludes that it lacks personal jurisdiction over St. Jude and Mardel. It therefore does not reach St. Jude's arguments seeking dismissal pursuant to Rule

12(b)(6). The dismissals are without prejudice to the reassertion of Akiane's claims in a court that can exercise personal jurisdiction over the defendants.[5]

Date: July 30, 2021

John J. Tharp, Jr.
United States District Judge

---

[5] Akiane also requests, in the alternative, that its claims against St. Jude be transferred to the Eastern District of Pennsylvania (the district in which St. Jude is located). It has not made a similar request as to Mardel. While the Court can transfer under 28 U.S.C. 1406(a) even though it lacks personal jurisdiction, *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962), it declines to do so here. Section 1406(a) authorizes transfer if it be "in the interest of justice," but dismissal is the default option ("The district court of a district in which is filed a case laying venue in the wrong district ***shall dismiss***" the action.). That Akiane may encounter statute of limitations issues if the case is dismissed is not a compelling argument to depart from the norm. *See Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("plaintiffs and their counsel… must determine where the plaintiff can get personal jurisdiction over the defendant before, not after, the statute of limitations runs; otherwise they court disaster… litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction.")